In the United States Court of Federal Claims

No. 23-794
Filed under seal: August 30, 2023
Filed: August 31, 2023[*]
NOT FOR PUBLICATION

| | |
|---|---|
| **J.E. McAMIS, Inc.,** | |
| *Plaintiff*, | |
| v. | |
| **UNITED STATES,** | |
| *Defendant,* | |
| and | |
| **TRADE WEST CONSTRUCTION, Inc.** | |
| *Defendant-Intervenor.* | |

*Paige B. Spratt*, Schwabe, Williamson & Wyatt, P.C., Vancouver, WA, *Mary Pat Buckenmeyer*, Dunlap Bennett & Ludwig PLLC, of counsel, and *Alexander J. Britten*, Britten Law Group PLLC, of counsel, for the plaintiff.

*Michael D. Austin*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Elisabeth Dixon*, United States Army Corps of Engineers, of counsel, for the defendant.

*Jacob W. Scott*, Smith, Currie & Hancock LLP, Tysons, VA, with Karl F. Dix, of counsel, for the defendant-intervenor.

## MEMORANDUM OPINION

***HERTLING*, Judge**

The plaintiff, J.E. McAmis, Inc. ("McAmis"), brought this pre-award bid protest against the defendant, the United States, acting through the Army Corps of Engineers ("the Corps"),

---

[*] Pursuant to the protective order in this case, this opinion was filed under seal on August 30, 2023. The parties were directed to propose redactions of confidential or proprietary information. The parties have jointly informed the Court that no redactions are needed. (ECF 43.) Accordingly, the opinion is being reissued for public availability as initially filed.

challenging the decision to rescind the cancellation of a solicitation to repair a jetty on the Oregon coast. The defendant-intervenor, Trade West Construction, Inc. ("Trade West") is the putative awardee of the contract. Both defendants have moved to dismiss the complaint, and all parties have filed motions for judgment on the administrative record. The Corps requires a decision on the protest by September 15, 2023. To accommodate that requirement, an oral decision was rendered at the close of oral argument on August 29, 2023. This opinion reflects that oral ruling, with case and record citations added, and phrasing formalized.

## I.     BACKGROUND

On August 1, 2022, the Corps issued a solicitation for bids to repair the Tillamook South Jetty in Tillamook County, Oregon under Solicitation No. W9127N22B0007. The large size of the jetty and its harsh location on the Pacific Ocean led the Corps to mandate that each offeror meet several "Definitive Responsibility Criteria" specific to the project. (AR 79.)

The Corps invited sealed bids under FAR Part 14. The award would be made to the lowest responsible, responsive bid. (AR 84.) In addition to the Definitive Responsibility Criteria, responsive bids needed to be materially balanced between line items or subline items, meaning that bids "based on prices significantly less than cost" for some items and "significantly overstated in related to cost" for others would raise "reasonable doubt that the bid would result in the lowest overall cost" to the government. (*Id.*)

The Corps received three bids: from McAmis, Trade West, and a third bidder. (AR 839-40.) After opening the bids, the Corps evaluated the offerors' proposed pricing against the independent government estimate. (AR 639-41.)

The Corps determined that Trade West's bid was unbalanced. (AR 840.) Trade West's proposed pricing for the Mobilization and Demobilization line-item was 88 percent above the government's estimate, and its proposed pricing for the line-item to construct a material off-loading facility was 97 percent below the government's estimate. (*Id.*) The Corps found these imbalances presented an "unacceptable risk to the Government" and awarded the contract to the next lowest bidder, McAmis. (*Id.*)

After being notified of the contract's award to McAmis, Trade West filed a timely protest with the Government Accountability Office ("GAO"). (AR 1293.) The Corps responded to Trade West's protest by agreeing to reevaluate the bids to ensure that they "had been evaluated fairly, consistently, and in conformance with the terms of the Solicitation and regulations." (*Id.*) Neither Trade West nor McAmis objected to the proposed corrective action, and the GAO dismissed Trade West's protest as academic. (AR 1365.)

To assist its re-evaluation of the bids, the Corps requested that Trade West explain its proposed pricing for mobilization and demobilization and for the material off-loading facility. (AR 1387.) Trade West explained that its costs for mobilization were much higher than the government's cost estimate because it needed to transport equipment from Michigan to Oregon, and because it would not be employing any third-party contractors to do the work. (AR 1389-90.) Its material off-loading facility costs were significantly lower than the estimate because

Trade West did not anticipate building an off-loading facility, and it explained its alternative approach. (AR 1390.) On January 11, 2023, after reviewing Trade West's submission, the Corps found that Trade West's bid did not meet the solicitation's Definitive Responsibility Criteria. (AR 1404-06.)

Upon finding Trade West's bid non-responsive, the Corps referred Trade West's proposal to the Small Business Administration ("SBA") for a Certificate of Competency ("COC"), as required by FAR 19.602-1. (AR 1409.) The SBA issued a COC for Trade West on February 22, 2023. (AR 1414.) The SBA informed the Corps that the COC was valid for 60 days, and that under Section 8(b)(7) of the Small Business Act, 15 U.S.C. § 637(b)(7)(A), the Corps was required to award the contract to Trade West "without requiring it to meet any other requirement of responsibility or eligibility." (*Id.*)

Instead of awarding the contract to Trade West pursuant to the COC, the Corps canceled the solicitation through Amendment 0008. (AR 1438.) In a letter to the SBA, the Corps explained that it intended "to make an award based on the [COC] for Trade West," but "as [it] was preparing that award [it] found that doing so would not be found legally sufficient." (AR 1423.) The SBA's finding that Trade West was competent to perform the contract indicated to the Corps that the solicitation's Definitive Responsibility Criteria were "overly restrictive and prevented other interested parties from bidding." (*Id.*) Following FAR 14.404(c)(10), the Corps determined that it was "clearly in the public's interest" to cancel the solicitation. (AR 1425.) The Corps planned to "resubmit [the solicitation] in a manner which does not preclude competition." (AR 1427.)

On April 25, 2023, the Corps reopened the solicitation through Amendment 0009, which "negat[ed] the action taken through [A]mendment 0008" and extended the period of bid validity through May 31, 2023. (AR 1449.) In response, counsel for McAmis raised a concern with the Corps that Amendment 0009 violated FAR 14.404(c)(10). (AR 1452.) Counsel explained that FAR 14.404(e)(2) required a "'new acquisition'" after cancellation of a solicitation under FAR 14.404(c)(10). (AR 1452.) In response to McAmis, the Corps reaffirmed that the solicitation "as it stands now (through amendment 0009) was not canceled." (AR 1451.)

## II.   PROCEDURAL HISTORY

On April 14, the Corps terminated McAmis's award of the contract for convenience. (AR 1465.) On April 28, 2023, McAmis filed a pre-award protest with the GAO to challenge Amendment 0009. (AR 1464.) It argued that the Corps was "prohibited by regulation from resurrecting a canceled solicitation" under FAR 14.404(c)(10). (AR 1465.) The decision to resurrect the solicitation "introduce[d] numerous infirmities into the procurement" and overlooked the "fact"—according to McAmis—that the job was "better suited to be evaluated on a best-value basis." (*Id.*) McAmis sought a new solicitation rather than a resurrection of the original. (*Id.*) Trade West intervened and requested that the GAO dismiss McAmis's protest on the merits. (AR 1932.)

The GAO had not resolved McAmis's protest when, on May 18, 2023, Trade West filed a protest in this court seeking to require the Corps to override the automatic stay, enjoin the Corps

from making further efforts to cancel the solicitation, and require the Corps to award the contract to Trade West.  (Case No. 23-736, ECF 1.)  Thereafter, the GAO dismissed McAmis's protest, finding that the court's decision on whether the agency may cancel or reinstate the solicitation would "render a decision by [the GAO] in this protest to be academic."  (AR 1991.)

McAmis filed its own bid protest on May 31, 2023.  (Case No. 23-794, ECF 1.)  The Corps stayed award of the contract until September 15, 2023.  On June 15, 2023, on Trade West's motion, the two protests were consolidated.  After initial motions were filed, Trade West moved to dismiss its protest voluntarily, and that motion was granted.  On August 3, 2023, Case No. 23-736 was dismissed, and the consolidation was vacated.  The motions have been fully briefed, and oral argument was held on August 29, 2023.

## III. DISCUSSION

The plaintiff and the defendant-intervenor have been engaged in other disputes over projects of the Army Corps of Engineers in the Pacific Northwest.  Earlier this year, Senior Judge Loren Smith decided *McAmis v. United States*, 164 Fed. Cl. 650 (2023).  In the opening of that opinion, Judge Smith explained the crux of the dispute in that case as follows:

> This case illustrates a fundamental conflict between the best government procurement for the effectiveness and efficiency of the government and the congressional support embodied in statutes specifically benefitting small businesses.

*McAmis*, 164 Fed. Cl. at 653.

Judge Smith's explanation applies equally well to this protest.  As in the earlier *McAmis* case, the Portland District Office of the Corps of Engineers had concerns over the proposal submitted by the same defendant-intervenor, Trade West.  Whether due to an initial finding of unbalanced pricing or subsequent concerns about the COC's effect on competition, the Corps revealed its reluctance to make the award to Trade West, the low bidder.  The Corps apparently resolved its qualms over Trade West's pricing, and, as in the earlier case, the SBA disagreed with the Corps over Trade West's ability to perform.  That is the end of the discussion.  While the facts and the procedural posture of this case are different, the outcome is the same.

The plaintiff has moved for judgment on the administrative record. Both the defendant and defendant-intervenor have moved for dismissal asserting different reasons.  In the alternative, both defendants have cross-moved for judgment on the administrative record.

### A. Standards of Review

#### 1. Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), a court must accept as true a complaint's well-pleaded factual allegations and construe them in the manner most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-

79 (2009). All reasonable inferences must be drawn in favor of the non-moving party. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

### 2. Motion for Judgment on the Administrative Record

Review of a motion for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the Court of Federal Claims requires the court to make factual findings based on the administrative record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Genuine issues of material fact do not preclude judgment. *Id.* Rather, the court holds a trial on the administrative record and must determine whether a party has met its burden of proof based solely on the evidence contained in that record. *Id.* at 1355.

Bid protests are evaluated under the Administrative Procedure Act's standard of review. *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706). Under that standard, an agency's procurement action may only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). A court may grant relief only upon the finding that either "the procurement official's decision lacked a rational basis" or "the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001).

A court's review of the procurement decision made by the procuring agency in a bid protest is "highly deferential." *Advanced Data Concepts v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). A court will not disturb an agency's determination so long as there is a reasonable basis for it, even if the court "might have reached a different conclusion as to the proper administration and application of the procurement regulations" in the first instance. *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989). A court must take care not to substitute its judgment for that of the agency, even if reasonable minds could reach different conclusions. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974).

On a motion for judgment on the administrative record, the court's review is limited to the administrative record, and the court makes findings of fact as if it were conducting a trial on a paper record. *See Young v. United States*, 497 F. App'x 53, 58-59 (Fed. Cir. 2012), *cert. denied*, 569 U.S. 964 (2013).

### B. Motions to Dismiss

#### 1. Trade West's Motion

Trade West's motion to dismiss is based on its arguments that McAmis's complaint warrants dismissal either for unclean hands or for antitrust violations. Those arguments are not supported in the record, and the motion to dismiss on those arguments is, accordingly, denied.

Trade West also argues that McAmis has waived its challenge by filing its protest too late. With respect to Counts II-IV of the complaint, Trade West's argument is well taken. These claims are dismissed because they are untimely. In Counts II-IV, the plaintiff alleged that the Corps abused its discretion by unreasonably "failing to adjust the [Period of Performance] to reflect the agency's needs and the passage of time," "fail[ing] to request updated pricing given significant inflation and the eight month passage of time" since bid submission, and "failing to reevaluate its needs given the passage of time and [failing] to conduct the procurement under FAR Part 15." (ECF 1 at 8-9.)

Under *Blue and Gold Fleet*, an offeror who perceives a "deficiency or problem in a solicitation" should not "wait to see if it is the successful offeror before deciding to challenge the procurement." *Blue and Gold Fleet, L.P., v. United States*, 492 F.3d 1309, 1314 (Fed. Cir. 2007). Instead, it must "raise the objection in a timely fashion." *Id.*

Despite its allegation that the passage of time has harmed McAmis, the plaintiff waited "240 days after bid opening, . . . 106 days after the Corps referred Trade West to the SBA . . . and 65 days after the COC was issued" to bring its own complaint. (ECF 36 at 2.) McAmis only challenged these aspects of the solicitation after the cancellation of the solicitation had been rescinded. That cancellation, however, did not cause the delays that McAmis alleged harmed it and made the solicitation not viable. Until April 14, 2023, McAmis was the awardee of the contract. (AR 1465.) The passage of time between August 2022 and April 2023 caused McAmis the same alleged harm as it alleged in its complaint. Evidently, though, the passage of time did not trouble McAmis until the Corps terminated its award for convenience and rescinded the cancellation. The failure to challenge the terms of the solicitation until after the rescission of the cancellation renders these challenges untimely under *Blue and Gold Fleet*. Accordingly, Counts II-IV are dismissed under Rule 12(b)(6). *See M.R. Pittman Group, LLC v. United States*, 68 F.4th 1275 (Fed. Cir. 2023) (dismissal under *Blue and Gold Fleet* is under RCFC 12(b)(6)).

#### 2. Government's Motion

The government's motion to dismiss advances two theories: that the plaintiff lacks standing, and that the complaint fails to state a claim.

##### a. Standing

To have standing in a bid protest action in this court, a plaintiff must be an "interested party." 28 U.S.C. § 1491(b)(1). To qualify as an interested party, an offeror must allege facts, which if true, "establish that it (1) is an actual or prospective bidder, and (2) possesses the

requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006).

An offeror can demonstrate a direct economic interest in two ways. In a post-award bid protest, the protestor's complaint must "show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)).

The "substantial chance" test also applies to pre-award protests when the agency has reviewed the bids but has not yet made an award. *Orion Tech. v. United States,* 704 F.3d 1344, 1348 (Fed. Cir. 2013).

In place of the "substantial chance" test, an offeror in a pre-award protest may establish a direct economic interest by demonstrating the solicitation or bidding process caused it to suffer a "non-trivial competitive injury." *Weeks Marine v. United States*, 575 F.3d 1352, 1361-62 (Fed. Cir. 2009). This exception applies when a "prospective bidder" challengers the solicitation's terms, "prior to actually submitting a bid." *Orion Tech.*, 704 F.3d at 1348.

McAmis was an actual offeror in this solicitation, so the remaining question is whether it has established a direct economic interest in the outcome of the solicitation. The government argues that the substantial chance test should apply, while the plaintiff argues that the non-trivial competitive injury test controls. (ECF 29 at 3-4.) The plaintiff contends that the non-trivial competitive injury test should apply because "McAmis does not seek award of this [s]olicitation but redress for the Corps' resurrection of a canceled (defective)" solicitation. (*Id.* at 4.) The plaintiff has done a good job of trying to portray its challenge in a manner that could sidestep the problem it faced in its earlier protest before Judge Smith.

McAmis is trying to get the solicitation tossed. While innovative, the argument fails. According to *Orion Tech.*, the non-trivial competitive injury test applies to "prospective" bidders. 704 F.3d at 1348. Because McAmis did submit a bid to this solicitation, and the Corps has already reviewed it and the other bids, the substantial chance test applies. McAmis cannot show that it has a substantial chance of being awarded the contract because of the COC. Therefore, it does not have standing. After the initial review of bids, but before Trade West filed its September 29, 2022, protest with the GAO, the Corps awarded McAmis the contract. (AR 1293.) After taking corrective action in response to Trade West's GAO protest, the Corps terminated McAmis's award for convenience. (AR 1440.) McAmis has not argued that the termination was unlawful. In fact, to reiterate, McAmis does not argue that it seeks award of the contract at all. (ECF 29 at 4.) Instead, it seeks to force the Corps to cancel the solicitation and start over. Trade West's COC, however, requires the Corps to award it the contract. (AR 1414.) The Corps incorrectly thought it had to cancel the solicitation after Trade West received the COC and accordingly issued Amendment 0008. (AR 1423.) That cancellation, however, was inconsistent with the applicable regulations, under which the SBA's issuance of a COC is controlling and dispositive. The Corps had no choice but to correct and rescind its erroneous cancellation of the solicitation and did so through Amendment 0009. (AR 1449.) In effect, the plaintiff's challenge to the reopening of the solicitation is a challenge to the SBA's issuance of

the COC. As Judge Smith decided in *McAmis*, however, the Court of Federal Claims does not have jurisdiction to review such a challenge. 164 Fed. Cl. at 659.

Because McAmis does not have a substantial chance of award, it does not meet the test to show it has statutory standing and cannot maintain this action.

### b. Failure to State a Claim

The defendant also moves to dismiss the complaint for failure to state a claim. The defendant argues that to prevail the plaintiff would have to demonstrate that the COC was issued by the SBA in error, but that such a claim is beyond the competence of this, or any, court to consider and resolve.

The plaintiff has previously asked this court to review a decision by the SBA to issue a COC. *McAmis*, 164 Fed. Cl. 650. The plaintiff argued that, although a COC is "conclusive with respect to all elements of responsibility," the Corps should have declined to award the contract to Trade West because, as in this case, it did not meet the solicitation's "special responsibility criteria." *Id.* at 658. Finding that the SBA "is 'empowered' and has the 'duty' to . . . issue a 'final disposition'" on a small business's responsibility, Judge Smith held that the Court of Federal Claims did not have jurisdiction to review the SBA's decision to grant a COC. *Id.* at 658-59. Recognizing this holding gives great weight to the SBA's decision to issue a COC, the court noted that the "unique circumstances of 15 U.S.C. § 637(b)(7)(C) . . . create a judicial barrier in which plaintiffs cannot avail itself of the normal presumption in favor of judicial review." *Id.* at 659 (citing *Precise Sys., Inc. v. United States*, 120 Fed. Cl. 586, 595 (2015)).

Here, the gravamen of the plaintiff's complaint again effectively seeks to challenge the SBA's decision to issue a COC to Trade West and the obligation of the Corps to accept that COC as dispositive as to responsibility. McAmis argues that this case can be distinguished from the earlier case because that case was about jurisdiction to "review the *issuance* of a [COC]," and Judge Smith "did not decide (or even consider) whether an agency can choose to not award a contract." (ECF 29 at 8.) Throughout his opinion, however, Judge Smith emphasized the conclusive nature of the SBA's responsibility determinations. *See e.g.*, *McAmis* 164 Fed. Cl. at 663. He identified any action resulting in a "dilution of the SBA's COC authority" as "contrary to the 1977 amendments to the Small Business Act." *Id.* (citing H.R. Rep. No. 95-535 (1977) (Conf. Rep.)). Allowing the Corps to exercise discretion as to whether it awards a contract in accord with a COC would undercut the SBA's authority to determine an offeror's responsibility to perform a contract. In addition, the statute provides no standard against which to measure the SBA's decision to award a COC. The absence of any judicially applicable and manageable standards supports Judge Smith's conclusion that there is no jurisdiction to review the SBA's award of a COC.

Because the complaint would necessarily require an evaluation of whether the COC was properly issued, and such an inquiry exceeds the jurisdiction of the court, the complaint fails to state a claim and must be dismissed under Rule 12(b)(6).

### C.    Motions for Judgment on the Administrative Record

Notwithstanding the plaintiff's lack of standing and the failure to state a claim, it is appropriate to consider the merits of the case and resolve the parties' cross-motions for judgment on the administrative record.  First, the standing question is a close one.  Second, with respect to the jurisdiction to review the issuance of a COC, one judge of this court cannot bind another judge.  Although Judge Smith held in *McAmis* that there is no jurisdiction to review the issuance of a COC and dismissed that case on that basis, that decision is not binding.  Because there is no binding Federal Circuit precedent on this point, consideration of the motions for judgment on the administrative record is appropriate.

#### 1.    Certificate of Competency

While disclaiming that it is seeking a review of the COC or reconsideration of Judge Smith's decision on jurisdiction in *McAmis,* the plaintiff has argued that Judge Smith's decision in its earlier case was wrong.  Specifically, McAmis argues that Judge Smith ignored the presumption of reviewability, and there is no clear congressional statement divesting the courts of the power to review SBA COC determinations.  Assuming the plaintiff's argument is correct and that the earlier *McAmis* case does provide a correct statement of the law, the standard of review for such a claim must be the same applicable in all bid protests, the APA's arbitrary and capricious test.

Applying such a test, the SBA's decision to award Trade West a COC was carefully reasoned and is not arbitrary or capricious.  The SBA undertook a careful analysis and made extensive findings on Trade West's competency to perform the contract.  (*See* AR 1414-18.) McAmis obviously disagrees with the SBA's analysis.  My role is not to say whether McAmis is right, or the SBA was right.  My role under the applicable standard of review is much more limited.  I only adjudge whether the SBA's decision was unreasonable.  On this record, that decision was not.  Therefore, even if the Court of Federal Claims has jurisdiction to review the SBA's decision to grant Trade West a COC, McAmis's challenge would be unsuccessful.

#### 2.    Referral of Trade West to the SBA

The primary thrusts of the plaintiff's challenge to the rescission of the cancellation of the solicitation are two-fold.  McAmis first challenges the decision by the Corps to refer Trade West to the SBA for a COC because its proposed pricing was unbalanced.  Second, McAmis challenges the legality of the rescission of the cancellation.

Under FAR 19.601-1(a), a contracting officer who determines an "apparent successful small business offeror lacks certain elements of responsibility . . . shall . . . [r]efer the matter to the" SBA.  The text of the Small Business Act adopts similar language, stating that a contracting officer "may not, for any reason [relating to responsibility] preclude any small business concern . . . from being awarded [the] contract without referring the matter" to the SBA. 15 U.S.C. § 637(b)(7)(A).  Moreover, previous interpretations of FAR 19.601-1(a) in this court have emphasized the referral requirement: "[t]his is not a gray area"; The determination that a lowest-priced bidder fails to meet a responsibility criterion activates the agency's "obligation" to make

9

the SBA referral. *Lawson Env. Servs., LLC v. United States*, 126 Fed. Cl. 233, 246 (2016). Once the SBA decides to issue a COC, the COC is "conclusive with respect to all elements of responsibility." FAR 19.602-4(b).

The plaintiff argues that the Corps should have either rejected Trade West's bid or canceled the solicitation notwithstanding the COC. First, Trade West submitted an unbalanced bid. Second, the Corps produced an anticompetitive solicitation by allowing Trade West to be awarded the contract when it did not have to meet the same responsibility criteria of other offerors.

Although a COC is conclusive regarding a bidder's responsibility, a contracting officer "may decide not to award to that offeror for reasons unrelated to responsibility." FAR 19.602-4(b). As Judge Smith noted in the earlier *McAmis* case, an agency's determinations on a bid's responsiveness to a solicitation's requirements and an offeror's responsibility are "different and are conducted separately prior to award." *McAmis*, 164 Fed. Cl. at 659. FAR 52.214-19(d) provides that "the government may reject a bid as nonresponsive if the prices bid are materially unbalanced between line items."

Read together, FAR 19.602-4(b) and 52.214-19(d) suggest that Trade West's unbalanced pricing would have been an acceptable reason for the Corps to reject Trade West's proposal; an unbalanced bid may be rejected as nonresponsive, and an agency may reject a proposal for reasons unrelated to responsibility. FAR 19.601-1(a) requires referral to the SBA only when an "apparent successful bidder" is rejected because it cannot meet the solicitation's responsibility criteria. Referral to the SBA under the FAR occurs when the agency has determined the bidder would be successful, but for the agency's responsibility determination.

The Corps evaluated Trade West's pricing when it initially reviewed the bids. At that time, the Corps found Trade West to be the lowest bidder, but its proposed pricing for mobilization and demobilization and the material off-loading facility line items to be unbalanced. The Corps rejected the proposal for this reason, and Trade West filed a complaint with the GAO.

After the Corps agreed to reevaluate the bids in response to the protest, it requested information from Trade West to explain its pricing for the unbalanced line items. (AR 1387.) It specifically asked Trade West to "describe the anticipated actual costs and related values which Trade West anticipates it would submit" upon completion of mobilization during performance of the contract. (*Id.*) The Corps was also concerned that Trade West's quoted price for the material off-loading facility "appear[ed] understated," so the Corps asked Trade West to "describe how [it] intend[ed] to barge materials to the site as required by the solicitation, and whether a [material off-loading facility] will be required." (*Id.*)

Trade West provided that information. It explained that its proposed mobilization pricing was "fair and reasonable" because Trade West would be transporting its equipment from the location of its last project on the Soo Locks in the Upper Peninsula of Michigan to the work site on the Oregon coast. (AR 1389.) In addition, it would be "mining, sorting, delivering, and placing all of the rock" with its own equipment rather than hiring third parties for those activities. (*Id.*) These efforts would be costly, but Trade West argued that its sole control over

the schedule and quality of the work would "significantly reduce[ ] any risk to the Government." (*Id.*)

Ultimately, Trade West argued that producing and placing the rock itself would result in "substantial cost savings as shown in [its] pricing for supplying the stone." (AR 1390.) To support its explanation, Trade West produced the actual trucking bids it had solicited to transport its equipment from Michigan to Oregon and the "actual hand-written bid notes [Trade West] produced shortly before the bid opening," which McAmis denigrates as "napkin scratches." (ECF 29 at 17.) (AR 1398-1401.)

Finally, Trade West noted that contract clause 252.236.7004 required Trade West to document its actual mobilization costs. (AR 1390.) After submitting those costs to the Contracting Officer, the contractor "would be paid the actual mobilization costs" upon completion of the mobilization. (*Id.*) This clause, Trade West explained, "remove[d] any risk of an advance payment." (*Id.*)

Regarding the material off-loading facility, Trade West explained its proposed pricing by noting that it did "not anticipate the need to construct" or "to perform the dredging that would be required to install" such a facility. (AR 1390.) Instead, Trade West explained that it would use construction processes that did not require a material off-loading facility to "assure timely performance . . . and preserv[e] the local eel grasses and environment." (*Id.*) As a result, Trade West would "pass the savings of reduced construction costs directly on to the government." (*Id.*)

The record does not reflect that the Corps accepted Trade West's explanations for its proposed pricing. The record reflects only that following its receipt of Trade West's explanations, the Corps made an initial determination that Trade West was not responsible. (AR 1404.) The Corps then referred Trade West to the SBA for that agency to determine whether to grant Trade West the COC. (AR 1409-11.) Before making the referral to the SBA, the Corps necessarily determined it would not reject Trade West's bid for unbalanced pricing. Otherwise, it would have simply reaffirmed its prior rejection of Trade West's offer.

Without question, it would have been much better for the Corps to have documented in the record a finding overturning its prior determination that Trade West's offer proposed unbalanced pricing. Nonetheless, the fact that the Corps referred Trade West to the SBA necessarily reflects a decision by the Corps to accept Trade West's pricing, which was the lowest bid. Trade West was then the "apparent successful bidder," and the Corps was required to make the referral to the SBA under FAR 19.601-1(a).

The information provided by Trade West to the Corps is sufficient to support the implicit reversal by the Corps of its earlier decision that Trade West's proposed pricing was unbalanced. It is not up to the Court to determine whether the pricing in Trade West's bid is unbalanced. The Court's role is to determine simply whether the decision by the Corps to change its mind after receiving Trade West's explanation for its pricing was arbitrary and capricious. It was not.

### 3. Rescission of the Cancellation of the Solicitation

In addition to its argument that the Corps should have rejected Trade West's bid for non-responsiveness, McAmis argues that the rescission of the cancellation of the solicitation through Amendment 0009 was unlawful.

The Corps had canceled the solicitation under FAR 14.404(c)(10) through Amendment 0008. That section of the FAR provides that an agency may cancel a solicitation when it determines that "cancellation is clearly in the public's interest." FAR 14.404(c)(10). When a solicitation is canceled under that provision, FAR 14.404(e)(2) specifies the "contracting officer shall proceed with a new acquisition."

The plaintiff argues that the cancellation of the solicitation through Amendment 0008 under FAR 14.404(c)(10) combined with the mandatory nature of 14.404(e)(2) prohibited the Corps from proceeding with an award from the original bids. Instead, the plaintiff argues, the Corps was required to issue a new solicitation, rather than rescind the cancellation through Amendment 0009 and resurrect the original solicitation.

After the SBA issued the COC for Trade West, the Corps continued to doubt whether it should award the contract to Trade West. Rather than proceed with the award, the Corps canceled the solicitation. In a letter to the SBA, the Corps explained that its "complete intent [was] to make an award based on the [COC] for Trade West," but as the Corps "was preparing that award [it] found that doing so would not be found legally sufficient." (AR 1423.) Specifically, the Corps found that the issuance of the COC by the SBA revealed two larger issues with the solicitation. (*Id.*) First, if an offeror that did not meet the criteria was found competent by the SBA, then the solicitation's Definitive Responsibility Criteria were "overly restrictive and prevented other interested parties from bidding." (*Id.*) The Corps explained that such a limitation could violate the Competition in Contracting Act. Second, the Corps explained that an award to an offeror that did not meet the solicitation's terms would effectively waive those terms for that offeror only, and such a limited waiver "is not allowable." (*Id.*) For these stated reasons, and in accordance with FAR 14.404(c)(10), the Corps determined that it was "clearly in the public's interest" to cancel the solicitation. (AR 1425.)

The plaintiff argues that even after the SBA issues a COC to a small-business offeror, FAR 19.602-4(b) affords the Corps discretion in deciding whether to award the contract to the small business "for reasons unrelated to responsibility." The plaintiff asserts that cancellation of the solicitation was proper because the Corps had determined that the award of the contract to Trade West based on the COC made the solicitation anticompetitive. Because the Corps canceled the solicitation as anticompetitive and not because of a finding that Trade West was not responsible, it had a permissible basis to cancel the solicitation for a reason unrelated to responsibility.

The plaintiff argues that here, the solicitation was anticompetitive because it prevented McAmis and the other offeror from competing with Trade West on a level playing field. The plaintiff explains that when McAmis submitted its bid, it needed to demonstrate that it could meet the Definitive Responsibility Criteria. The Corps would have rejected McAmis's bid

without such a showing, and as a large business, McAmis could not rely on the SBA to replace its need to demonstrate its ability to meet those criteria. It is therefore anticompetitive, the plaintiff argues, for the Corps to proceed with the solicitation knowing that Trade West's COC effectively allows Trade West to bypass the Definitive Responsibility Criteria to which its competitors would be held. Under FAR 19.602-4(b), the COC prohibited the Corps from requiring Trade West to meet "any other requirements of responsibility," but the Corps remained free to require McAmis and the other offeror to meet those requirements. The plaintiff argues that Trade West was effectively responding to a different solicitation with different requirements from its competitors, and this inequality was anticompetitive. Therefore, the plaintiff explains, the Corps lawfully canceled the solicitation because it was in "the public's interest" under FAR 14.404(c)(10).

Of course, the Corps subsequently negated Amendment 0008 through Amendment 0009, rescinding the cancellation and restoring the original solicitation. (AR 1461.) The plaintiff argues that resurrecting a lawfully canceled solicitation rather than issuing a new solicitation violated the mandatory language "shall" of FAR 14.404(e)(2). The defendant argues that through Amendment 0009 the Corps rightfully corrected its mistaken decision to issue Amendment 0008; in effect, the defendant argues that the solicitation was never lawfully canceled, and no new solicitation was required. (AR 1451.)

Under the law and the FAR, the SBA's COC issued to Trade West is conclusive as to Trade West's responsibility to perform the contract. Although in some cases a cancellation to avoid an anticompetitive solicitation may lawfully restore offerors to a level playing field, the COC prevents that result in this case. The plaintiff's argument turns on whether the SBA's decision to grant Trade West a COC was correct; in issuing the COC, the SBA found that Trade West was responsible to perform the contract. Any determination that the solicitation was anticompetitive requires scrutiny as to Trade West's responsibility, which the COC prohibits. Because the Corps' decision to cancel the solicitation based on its perceived anticompetitive nature necessarily relied on the impact of Trade West's COC. The Corps could not have canceled this solicitation without substituting its judgment for the that of the SBA. The purported cancellation through Amendment 0008 was without legal basis and therefore issued in error. Amendment 0009 rescinded that unlawful decision and reflects a correction of error rather than a resurrection.

The plaintiff can only prevail on this argument if the Corps lawfully canceled the solicitation. That cancellation would fail to give effect to the SBA's COC, and the FAR precludes that outcome. In effect, the plaintiff again seeks judicial review of the SBA's issuance of a COC. *See McAmis*, 164 Fed. Cl. at 658. If the Corps has the discretion either to follow or reject the SBA's determination, then the decision to cancel the solicitation was lawful, and Amendment 0009 would have illegally resurrected a canceled contract in violation of FAR 14.404-1(e)(2). The Corps does not have such discretion, however, and the reopening of the solicitation merely corrected the Corps' error in canceling the solicitation.

Accordingly, the plaintiff's second line of attack on the rescission of the cancellation also fails.

**IV.     CONCLUSION**

The defendant's motion to dismiss for lack of standing and failure to state a claim on which relief can be granted is granted.  Even if the plaintiff had standing and the complaint stated a claim, the defendants' motions for judgment on the administrative record are granted, and the plaintiff's motion for judgment on the administrative record is denied.  Amendment 0009 to the solicitation did not improperly resurrect a canceled solicitation.  Rather, it negated the wrongful cancellation of the solicitation so that the award could properly be made to Trade West.

The various motions to supplement the court's record are denied as unnecessary.  Materials presented for consideration of the injunction factors can be provided to the court without a motion.  To the extent the parties offered declarations going to the potential relief, those materials have been reviewed.  On the other hand, the motions to supplement the administrative record are all denied as moot and would have been denied in any event because the record allowed for judicial review without the proposed additional materials.

An appropriate order reflecting this decision was entered following oral argument; this written opinion reflects the rationale for that order and generally tracks portions of the oral ruling provided on the record at the conclusion of the argument.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**
